### GEORGE BOSTON v. HEWITT & DUGGER.

#### (Filed Aug. 25, 1899.)

1  CONTRACT—*Evidence—Verdict.* In this case, which involved divergent statements of an oral contract for the boring of a well, testimony having been adduced to support the contention of the plaintiffs and the defendant, and the jury having found for the plaintiffs, the whole case has been examined; and adequate testimony having been adduced to support the contention of the plaintiffs, and no error found in the instructions, the verdict will not be disturbed.

2.  EXPERT TESTIMONY—*Admissible.* The defendant, after the boring of the well, having insisted upon having the space outside the pump pipe filled with pounded stone and gravel, the testimony of experienced well diggers was offered by the plaintiffs to show that such filling would have the effect to stop the flow of water. This is admissible as expert testimony, since it was of such a character as that it could only be known to a class of persons especially conversant with, and experienced in, the particular business here in issue.

(Syllabus by the Court.)

*Error from the District Court of Cleveland County; before B. F. Burwell, District Judge.*

*C. L. Botsford* and *B. F. Williams, Jr.,* for plaintiff in error

*W. J. Jackson,* for defendant in error.

Action by Hewitt & Dugger against George Boston. Judgment for plaintiffs. Defendant appeals. Affirmed.

The action was brought by Hewitt & Dugger to re-cover the contract price for boring a well, who averred that they had drilled a well on defendant's (Boston's) farm to the depth of 224 feet, for which the defendant had agreed to pay 30 cents per foot for the first 100 feet, and 40 cents per foot for the remainder of the depth; that an accounting was had, and the sum of $71.30 found to be due, which the defendant refused to pay. No an-swer was filed by the defendant. After trial and verdict by a jury, and judgment for the plaintiffs, the defendant appealed to the district court, and the case there met with a similar result. The defense sought to show that the plaintiffs had agreed to get the defendant sufficient water for a stock well on his place.

Opinion of the court by

McATEE, J.: There was no written contract between the parties. It was testified to on the trial by one of the plaintiffs, Hewitt, that he made a contract with Boston to dig a well for him. "He told me he wanted a stock well, and he said it would take about 214 feet, or in the neighborhood of it, to get water. He said there was a well on one side of 216 feet deep, and one the other way 212 feet deep, and he said he was about half way between the two, and that 214 feet or right in the neighborhood of it, would get water. He said he didn't want to fail to get water. I said, 'Well, Mr. Boston, if the water is there, we will get it. I will put a hole to it.' We agreed on the price; *  * 30 cents for the first 100 feet, and 40 cents for the next; *  * and we went up and dug the well." And the contract was that the well was to be 214 feet, or in the immediate neighbor-hood of it, and that "he (Boston) said he didn't know that

it was exactly that;" that the plaintiffs dug the 214 feet, and 10 feet further; that, when they had gotten down to 219 feet, the defendant said to the plaintiffs, "I believe I have made a mistake myself in trying this ground longer; I wish you could come back, and put it down to the length of my pump pipe, as I have no tools to cut it off with." The testimony showed that, while the plaintiffs were digging the well, Boston had provided a pump pipe 224 feet in length, and had it ready at that time to insert in the well, and that when it was inserted Boston said that he wished it put in so that 2 feet of it might stick out, which was done. When the well was finished, and the pump pipe inserted, at Boston's request the plaintiffs put a lot of small rocks and broken up gravel into the well around the pipe, without a sand pipe on it, against the advice of the plaintiffs, who told him (Boston) that this deposit would never let the water penetrate through it. Evidence was produced of witnesses experienced in boring wells, who testified that such filling was calculated to suppress the flow of water, and that, if not remedied, it would eventually stop the flow entirely. After the work was finished, and the pump placed in the well, the defendant refused to pay the plaintiffs for their labor, and insisted that the contract made between them was for a "stock" well, by which he meant practically an inexhaustible supply of water, whereas the supply of the well in question was but twelve or fifteen barrels per day, and that the true, plain and natural intent of the terms of the contract was that the supply was to be inexhaustible for the purposes mentioned. Evidence was given to controvert these statements, and the case was submitted to the

jury upon instructions which were adequate to the protection of the interests of both the plaintiffs and defendant. The jury were specially instructed, in behalf of the defendant, that if the plaintiffs agreed to drill for the defendant a well which should furnish a sufficient amount of water for his stock and that they were to receive no compensation unless they did so furnish a sufficient amount of water for that purpose, and if they failed to sink the well to such a depth as would furnish such a sufficient amount of water for the defendant's stock, they were not entitled to recover. Upon the whole case and the instructions so given the jury found for the plaintiffs.

There was adequate testimony upon all the points in the case upon which the jury were justified in making this finding, if they believed the plaintiff's evidence rather than that of the defendant, and the verdict will not be disturbed. We have examined the testimony, and we think that the jury were justified in coming to that conclusion.

The testimony of Hewitt, Fisher, and Teeters was introduced on behalf of the plaintiffs below, who testified, as persons experienced in well digging, touching the effect upon the flow of water of filling up the well, after the insertion of the pump pipe, with pounded stone and gravel. Their testimony was to the effect that it reduced the flow of water and would eventually tend to stop it altogether. Their testimony was objected to, upon the ground that it was expert testimony, and not admissible, since such testimony is only admitted where facts to be shown are of such a character as not to have come within the knowledge, observation, and judgment of

ordinary men. We think the contention cannot be sustained, since the facts testified to are evidently those which can be known only to a class of persons especially conversant with, and experienced in, the particular business here in question. There were other circumstances touching the matter, and involved in the interrogatories proposed to these witnesses, and which could only be responded to intelligently by the class of persons having the especial and expert knowledge relating to the subject matter of the boring of wells, and we think the testimony was properly admitted.

Objection is made to the instructions given by the court to the jury in the cause. We think they were full, and stated the law in the case, and that there is no ground for complaint, and that, upon all the evidence and the instructions, the jury found correctly in behalf of the plaintiffs, and that there is no reversible error in the cause. The judgment of the court below will be affirmed.

Burwell, J., having presided in the court below, not sitting; all of the other Justices concurring.